HASKELL (MABIE v.). See Case No. 8,653.

## Case No. 6,194.

### HASKELL et al. v. SHOE MACHINERY MANUF'G CO. et al.

[3 Ban. & A. 553;[1] 15 O. G. 509.]

Circuit Court, D. Massachusetts. Oct. 9, 1878.

PATENTS — INFRINGEMENT — PRESUMPTION—"SEWING MACHINES"—PATENTABILITY.

1. Patents, in due form, when introduced in evidence in a suit for infringement, afford a prima facie presumption that the alleged inventor was the original and first inventor of what is therein described as his improvement.

2. The invention described in letters patent No. 29,785, granted to David Haskell, August 28, 1860, for an improvement in sewing machines, which consisted in the combination of an isolated upright post and a notched movable plate, whereby flat and tubular work may be performed on the same machine: *Held*, to be the proper subject of a patent, and that the patent is valid.

[This was a bill in equity by David Haskell and others against the Shoe Machinery Manufacturing Company and others for an injunction and an account.]

Edmund Burke and J. S. Abbott, for complainants.

Smith & Bates and W. W. Swan, for defendants.

CLIFFORD, Circuit Justice. Patents in due form, when introduced in evidence in a suit for infringement, afford the party seeking redress a prima facie presumption that the alleged inventor was the original and first inventor of what is therein described as his improvement. Redress is sought in this case by the complainants for the infringement of a patent granted to their assignor on the 28th of August, 1860, for an improvement in sewing-machines. When granted, the term of the patent was for fourteen years, but the patent was subsequently extended for the further term of seven years from the expiration of the original term.

[1] [Reported by Hubert A. Banning, Esq., and Henry Arden, Esq., and here reprinted by permission.]

Without entering into details, suffice it to say the bill is in the usual form, charging infringement.

Service was made, and the respondents appeared and filed an answer. They admit that the patent was granted, and that the term was extended, but deny that the patentee was the original and first inventor, or that the improvement had not been known and used before the alleged invention by the complainants' assignor. Certain other defences are set up to the effect following: Both utility and patentability are denied, and they aver that the patent is in every respect invalid and void, and give notice that they will put three certain patents of prior date in evidence, in which a full description is given of the alleged improvement. Prior use of the improvement is alleged, and they give the name of Curtis Stoddard as the person who knew and used the improvement antecedent to the supposed invention by the assignor of the complainants. All these defences are formally set up in the answer, and they deny that they have ever constructed, used or vended the patented invention in violation of the rights of the complainants.

Proof to show the utility of the patented improvement is very abundant and conclusive. It shows that the advantage of the machine over other sewing machines is, that it combines an isolated work post with a detachable table, by which the same machine will answer both for the purpose of sewing manufactured articles of a tubular form, as well as flat pieces of work requiring larger supporting surface for the manipulation of the work. When sewing tubular articles of manufacture, such as boot-legs or other similar shaped articles, the isolated post is used without the detachable table, and both may be used together when sewing articles requiring the support of a larger surface. Beyond all question it has largely come into use, and the evidence proves to the satisfaction of the court, that it was the proper subject of a patent, and that it is highly useful in accomplishing the work for which it it is designed. Machines of the kind, of course, have a frame, and the specification shows that the patentee has a bed or work-table which, instead of being made with an unbroken flat horizontal surface, as is generally the case, is made with an isolated upright post connected at the bottom, by a foot, with the main portion of the table, whose upper surface is of the same level as the top of the post.

Two explanations are made by the patentee which it is important to notice. (1) That the post may be made as small as desired, in order that articles of thick, stiff material, whether large or small, may be placed upon it, in the manner illustrated by the piece of work represented in red outline in the drawings, with their edges lapping over it on either or all sides, and be turned round upon it in all directions. (2) Suggestion is also made that the needle passes through a hole in or near the centre of the post, and that it may be used to perforate the fabric under operation, either by an upward or downward movement, but the patentee prefers the upward movement, which appears to be satisfactory.

Such a construction of the bed, with an isolated post, the patentee states, is specially adapted for shoemakers' use, and he alleges that it makes a machine capable of doing much of the work on boots and shoes which it has been difficult, and, in some cases, impossible, to do with the machines heretofore used. In order that the machine may be adapted to flat work, as well as that which is tubular in form, he provides a movable plate, in the form shown in the drawings, with a recess to fit around the post, with its opposite side straight to fit the open space, the same being formed with a bevelled end to fit and rest in a half-dovetailed recess and the shoulder provided for its support in the post. What he claims is the arrangement of the isolated upright post, with the notched movable plate, in the manner shown and described.

Viewed in the light of these suggestions, it is clear that the patentee does not claim either the post or the movable plate. Instead of that, the invention consists in the combined arrangement of those two devices in a sewing-machine in the described way, so that the machine may be usefully and successfully used in sewing tubular articles of manufacture, such as boot-legs or flat pieces of work which require a large supporting surface. Construed as the claim should be in connection with the descriptive portion of the specification which precedes, it is clear that the combination described is special, including not only the isolated post and the movable plate, but also the double arrangement by which the two described kinds of work may be successfully accomplished in the same machine. Examined in that light, the court is of the opinion that the machine is a highly useful one, and one that deserves to be favorably considered by the court.

Attempt is made by the respondents to show that the assignor of the complainants was not the original and first inventor of the improvement. They make the allegation, and the burden is upon them to prove it, as the prima facie presumption is the other way. Three patents are referred to in the answer as showing prior invention, of which only two were introduced in evidence. Nor is it necessary to enter into any detailed exposition or explanation of the patents given in evidence, as it is clear that neither of them is of a character to support the issue tendered by the respondents, which is all that need be said upon the subject of those patents. Suppose that is so, still it is insisted by the respondents, that the thing patented was known

and used by Curtis Stoddard prior to the alleged invention thereof by the assignor of the complainants. Evidence upon this issue was introduced by both parties, and the whole of it has been carefully examined, and the court will give conclusions formed from that examination.

1. Taken as a whole, the court is of the opinion that the invention of the assignor of the complainants was made as early as the 28th of February, 1860, as shown by evidence which leaves no doubt of its accuracy and truthfulness.

2. Sufficient appears to satisfy the court that the Stoddard machine, as originally constructed, was completed at a prior date, but that the machine, as constructed and organized at that date, was not of a character to supersede the complainants' patent, for the reason that the combination, construction, and mode of operation were substantially different. But the evidence is satisfactory that it was subsequently altered and made to conform to the machine which is the subject of the present controversy. Marked differences of statement exist among the witnesses in respect to that question, but the court is of the opinion, in view of the whole evidence, that the alteration was not completed until the 19th of May, 1860, and that the assignor of the complainants was and is the original and first inventor of the patented improvement.

Nothing remains except to determine the issue of infringement. Substantial aid in determining that question is derived from the stipulation of the parties, in which it is agreed that the respondents, prior to the filing of the bill of complaint, made or participated in making machines like Exhibit F, which was given in evidence at the hearing. Expert testimony upon that subject was introduced by complainants. They asked their principal expert to state whether, in his judgment, that exhibit does or does not contain the devices, arrangement, and combination of mechanism described in the complainants' patent, and he answered in the affirmative, and stated that it had an isolated work-post and a detachable work-plate in all respects similar to what is described in that patent, and that it is capable of performing the same functions, and is constructed in precisely the same manner. Decisive support of that view is derived from a comparison of the exhibit with the mechanism described in the patent, and is fully confirmed by the other evidence in the case.

Decree for complainants for an account, and for an injunction, with costs.

[See Case No. 13,911.]